Nicolas A. Pappas (SBN 316665)
npappas@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

John N. Ellison (*pro hac vice* forthcoming)
REED SMITH LLP
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA  19103

Attorneys for FIRST LOOK
ENTERTAINMENT, INC. AND FIRST
LOOK INSTITUTE, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRST LOOK ENTERTAINMENT, INC., and FIRST LOOK INSTITUTE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> AXIS INSURANCE COMPANY <br><br> Defendant. | Case No. 2:22-cv-5957 <br><br> **COMPLAINT FOR:** <br><br> **1. BREACH OF CONTRACT** <br><br> **2. TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** <br><br> **DEMAND FOR JURY TRIAL** |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    This is a civil action, over which this Court has subject matter jurisdiction

2  pursuant to 28 U.S.C. § 1332, brought by Plaintiffs FIRST LOOK

3  ENTERTAINMENT INC. and FIRST LOOK INSTITUTE, INC. (collectively "First

4  Look") against Defendant AXIS INSURANCE COMPANY ("Axis").  First Look, by

5  and through its attorneys, hereby complain and allege as follows:

6                              **INTRODUCTION**

7    1.    This is a lawsuit to recover the full amounts owed and other related

8  damages under an Axis policy wherein Axis promised to provide the named insured,

9  PMO Trust, and certain Specified Entities, such as First Look, with broad coverage for

10  employment practices liabilities, management and entity liabilities, and fiduciary

11  liabilities, among other coverages.  First Look's lawsuit seeks indemnity for a

12  settlement it entered into with a person with whom First Look had contracted for labor

13  and services ("Claimant") relating to alleged wrongful acts allegedly committed by

14  First Look during Claimant's relationship with First Look (the "Claim").  First Look

15  also seeks reimbursement of the defense costs it incurred in defending the Claim.

16    2.    First Look is alleged to have wrongfully terminated Claimant and acted

17  negligently in its performance of certain duties related to certain obligations

18  Claimant's contends First Look did not honor, among other claims.  Claimant asserts

19  the suffering of emotional distress from such alleged negligence.

20    3.    After many years of a successful relationship, First Look parted ways

21  with Claimant.  Claimant was displeased and sought damages from First Look,

22  alleging that First Look committed a host of wrongful acts.  Rather than engage in

23  litigation, First Look and Claimant settled the Claim for a confidential sum after a

24  private mediation process in which Axis played an active and approving role.

25    4.    Consistent with the terms and conditions of the Axis policy (the

26  "Policy"), the parties' course of dealing with respect to the Claim, and the parties'

27  prior course of dealing concerning similar (but unrelated) claims, the Claim is

28  expressly covered.  Yet Axis wrongfully denied coverage based on a fabricated

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   misunderstanding of the Claim and refusal to reconsider facts demonstrating coverage.

2   Axis took this position despite leading First Look to believe it would pay the

3   settlement associated with the Claim by contemporaneously approving the settlement

4   amount of the Claim, and despite covering two prior claims that were similar in many

5   respects (but unrelated) and handled by Axis in a similar fashion.  The only difference

6   between this Claim and the prior resolutions was the price tag; Axis paid for the cheap

7   ones and ran from coverage when the resolution price increased.

8        5.    After actively participating in the resolution process of the Claim,

9   including being a contemporaneous participant in the mediation and the negotiations

10  conducted during it, Axis manufactured an illegitimate denial months after the

11  settlement had been agreed and it knew that the Claim was going to cost significantly

12  more than the previous two claims it settled for First Look.  In other words, Axis

13  determined coverage based on the amount of coverage First Look sought, not the facts

14  of the Claim and/or the terms and conditions of the Policy.  As shown below, Axis'

15  position is contrary to the language of the Policy, the law, the parties' and insurance

16  industry custom and practice, and the facts.  Moreover, its deceptive and misleading

17  conduct created the clear impression that it was providing coverage for the settlement

18  of the Claim.  Such conduct is the paradigm of how an insurance company should **not**

19  treat its policyholder.  In acting this way, Axis violated its duty of good faith and fair

20  dealing knowingly and with malice.

21       6.    First Look seeks to enforce Axis' obligations owed to First Look under

22  the Policy to indemnify First Look for the full amount of the settlement of the Claim

23  and the defense costs it incurred defending the Claim.  First Look also seeks

24  compensatory and punitive damages against Axis for breach of contract and the

25  implied covenant of good faith and fair dealing because Axis unreasonably breached

26  its duties to First Look with its handling of the Claim and its refusal to contribute any

27  amount to the settlement of the Claim.

28

– 2 –
COMPLAINT

**THE PARTIES**

7.      First Look Entertainment, Inc. is a Delaware corporation with its principal place of business in New York, New York.  First Look Entertainment, Inc. is authorized to conduct business in the State of California.  First Look Entertainment, Inc. was formerly known as First Look Productions, Inc., an insured entity under the Policy as it is a wholly-owned subsidiary of PMO Trust, the named insured entity in the Axis Policy, and is specifically listed in the policy as an insured entity.

8.      First Look Institute, Inc. is a Delaware nonprofit corporation with its principal place of business in New York, New York. First Look Institute Inc. is authorized to operate in the State of California.  First Look Institute, Inc. was formerly known as First Look Media Works, Inc., an insured entity under the Policy as it is a wholly-owned subsidiary of PMO Trust, the named insured entity in the Axis Policy, and is specifically listed in the policy as an insured entity.

9.      First Look is informed and believes, and on that basis alleges, that Axis Insurance Company is an Illinois company with its principal place of business at 111 South Wacker Drive, Suite 3500, Chicago, Illinois.  All relevant contacts with Axis regarding the Claim were through Axis representatives based in its California offices.

10.     First Look is informed and believes that Axis is, and at all relevant times herein, has been engaged in selling commercial insurance policies, and other products and services to, among others, companies like First Look, both in and outside of California.

**JURISDICTION AND VENUE**

11.     The subject matter jurisdiction of this Court is based on 28 U.S.C. § 1332, in that there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this District.  Axis sold the Policy to named insured PMO Trust at its address in Redwood City,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

California.  When Axis analyzed coverage for the Claim, communicated to First Look about the claim, denied coverage for the Claim, and acted in bad faith, it did so from its office in Los Angeles, California.

<u>**FACTUAL ALLEGATIONS**</u>

***The Policy***

13.      Axis sold Policy No. P-001-000247282-02 to PMO Trust for the February 2, 2021, to February 2, 2022, policy period (the "Policy").  A true and correct copy of the Policy is attached to the Complaint as Exhibit A.

14.      The Policy is a package policy that contains multiple parts, an Employment Practices Liability ("EPL") coverage, a Management Liability coverage, a Fiduciary Liability coverage, and a Crime coverage.

15.      The Policy defines **Insured** as an **Insured Entity**.  *Id*. General Terms & Conditions, Definitions.  The Policy defines **Insured Entity** to include the **Named Insured**, the **Subsidiaries,** and **Specified Entities**.  *Id*., PMO Trust End., Schedule of Specified Entities, MANU 7545 03/19.

16.      First Look Entertainment, Inc. and First Look Institute, Inc. are both insured under the policy as **Specified Entities** because both entities are included in the endorsement under their previous names.  First Look Entertainment, Inc. was formerly known as First Look Productions, Inc., an entity included in the list of **Specified Entities** for which the policy provided coverage.  *Id*.  Similarly, First Look Institute, Inc. was formerly known as First Look Media Works, Inc., an entity that Axis included in the list of **Specified Entities** for which the Policy provided coverage. *Id*.

17.      Under the Policy's EPL coverage part, Axis agreed to pay:

**Loss** that the **Insured** becomes legally obligated to pay on account of a **Claim** by or on behalf of an **Employee** first made against the **Insured** during the **Policy Period** or the **Extended Reporting Period**, if applicable, for a **Wrongful Employment Act** committed by an **Insured** or by a person

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   from whom the **Insured** is legally liable.

2   *Id*., EPL Coverage Part, Insuring Agreement A.

3       18.   The Policy defines **Claim**, in pertinent part, as "a written demand . . . for

4   monetary relief or non-monetary relief, including a written request to . . . engage in

5   any alternative dispute resolution."  *Id*. at General Terms & Conditions, Definitions.

6   The Policy, however, limits the definition of **Claim**.  With respect to the EPL

7   coverage, "**Claim** does not mean . . . a grievance."  *Id*.

8       19.   The Policy defines **Wrongful Act** as "any actual or alleged error,

9   misstatement, misleading statement, omission, neglect or breach of duty by . . . the

10  **Insured Entity."**  *Id*.

11      20.   The Policy defines **Loss** as:

12          monetary judgments, awards, or settlements, including pre-

13          judgment interest, post-judgment interest, statutory, punitive,

14          multiplied or exemplary damages, attorney's fees, and costs

15          included as part of a judgment or award, and

16          **Defense Costs**;

17          . . .

18          solely with respect to the EMPLOYMENT PRACTICES

19          LIABILITY COVERAGE PART, front pay and back pay

20          included as part of a judgment or award,

21          . . .

22          In determining the insurability of punitive, exemplary, or

23          multiplied damages or any other Loss defined above, the

24          insurability of which is dependent on the law applicable to this

25          Policy, the law of the jurisdiction most favorable to the

26          insurability of such amounts will apply; provided that such

27          jurisdiction is (i) where such amounts were awarded or

28          imposed; (ii) where the Wrongful Act, Enterprise Security

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Event or violation of Privacy Regulation underlying the Claim

2   took place; (iii) where either the Insurer or any Insured is

3   incorporated, has its principal place of business, or resides; or

4   (iv) where this Policy was issued or became effective.

5   *Id.*

6   21.   The Policy defines **Wrongful Employment Act** as

7   any actual or alleged:

8   1. Discrimination or sexual or other harassment, including

9   bullying, in the workplace in violation of any law that

10   prohibits such conduct, or any **Similar Law**, or based on

11   gender identity or expression or sexual orientation;

12   2. Wrongful demotion, discharge, dismissal, termination

13   (either actual or constructive), or adverse change in the

14   terms, conditions, or status of employment;

15   3. wrongful failure to employ, promote, or grant tenure;

16   4. wrongful discipline, deprivation of a career opportunity,

17   or negative reference;

18   5. employment related misrepresentation;

19   . . .

20   8. breach of any oral, written or implied employment

21   contract;

22   9. retaliation in employment for exercising any legally

23   protected right or engaging in any legally protected

24   activity;

25   10. failure to adopt adequate employment-related policies

26   and procedures; negligent hiring, training, supervision, or

27   retention of employees; . . . ; or wrongful infliction of

28   emotional distress, mental anguish, or humiliation; but

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

only when alleged in connection with items 1 through 9
above;

committed by an **Insured** against an **Employee** by any
means. . .

*Id*.

22.   The Policy defines **Employee as**

Any natural person who was or is

a. employed by the **Insured Entity** on a full-time, part-time,
temporary, seasonal, volunteer, internal, or leased based
and whose labor or service during such employment was
or is directly solely by the **Insured Entity**; or

b. contracted by the **Insured Entity** to provide labor or
services solely for the **Insured Entity** during the contract
term.

*Id*.

23.   The EPL coverage also contains a Third Party Liability Coverage which
covers:

**Loss** that the **Insured** becomes legally obligated to pay on
account of a **Claim** first made against the **Insured** during
the **Policy Period** or the **Extended Reporting Period**, if
applicable, for a **Wrongful Third Party Act** committed by
an **Insured** or by a person for whom the **Insured** is legally
liable.

*Id*. at EPL Coverage, § B.

24.   The Policy defines **Wrongful Third Party Act** as "any actual or alleged
discrimination, harassment, whether sexual or otherwise, in violation of a person's
civil rights, committed by an **Insured** against any person other than an **Employee**."
*Id*. General Terms and Conditions, Definitions.

– 7 –
COMPLAINT

1

### *The Claim & Axis' Wrongful Denial*

2   25.   In 2014, Claimant entered into a contractual relationship to provide labor

3   and services to First Look.  In return for a compensation package, Claimant was

4   obligated to perform a set of services designed to advance and support First Look's

5   business.

6   26.   A year later, Claimant and First Look entered into an agreement that

7   defined various obligations and responsibilities of the parties, including the scope of

8   the labor and services Claimant was to provide First Look (the "Original

9   Agreement").

10   27.   Claimant's relationship with First Look was defined by the Original

11   Agreement.  The existence of the Agreement and adherence to the principles it

12   memorialized was a necessary precondition of Claimant's relationship with First

13   Look.

14   28.   Thereafter, Claimant signed a new agreement to provide labor and

15   services to First Look (the "Subsequent Agreement").  The Original Agreement,

16   according to Claimant, continued to play a prominent role in the relationship between

17   First Look and Claimant, but they restructured the other details of the contractual

18   relationship to provide labor and services to First Look.

19   29.   Prior to the Subsequent Agreement, First Look and Claimant settled

20   grievances relating to pre-2019 compensation, responsibilities, projects, and allocation

21   of resources ("Original Settlement").  The parties also settled all grievances relating to

22   discrimination and pay disparity.  The parties settled those grievances for a significant

23   sum and Claimant acknowledged being made whole, resulting in the execution of the

24   Subsequent Agreement.

25   30.   After the execution of the Subsequent Agreement, Claimant became

26   dissatisfied with certain decisions made by First Look, and claimed that First Look

27   was not fulfilling its various obligations that were purportedly owed by First Look.

28   31.   Despite First Look basing its decision on financial constraints and other

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

considerations, Claimant claimed otherwise.

32.     In late 2020, First Look chose not to renew its relationship with Claimant, citing Claimant's lack of performance of the labor and services that were due to be provided to First Look in relation to the level of compensation that First Look was paying.

33.     Then, on April 2, 2021, Claimant delivered a letter to First Look alleging wrongful termination, a breach of the 2019 Agreement, and ensuing emotional distress, among other allegations.  Each of Claimant's allegations constitutes a covered Wrongful Employment Act.

34.     As part of the April 2 letter, Claimant said that if First Look did not agree to the demands, a lawsuit would be filed against First Look.  As such, the April 2 letter constituted a Claim within the meaning of the Policy and was made squarely within the Policy Period.

35.     First Look and Claimant settled their dispute concerning the Subsequent Agreement with no admission of wrongdoing (the "Second Settlement").  With the settlement, First Look extinguished any liability for the conduct alleged above arising out of the Subsequent Agreement and any potential liability arising from Claimant's relationship with First Look.

36.     Under the terms of the Policy, First Look is entitled to indemnification for the entirety of the settlement amount, which settled alleged acts or omissions that are clearly covered by the terms of the Policy.  First Look is also entitled to reimbursement of defense costs incurred defending the Claim.

### *Axis' Unreasonable Handling of the Claim*

37.     On April 19, shortly after it received Claimant's demand, First Look, through its broker, notified Axis of the Claim.

38.     Axis responded on May 26, 2021.  Axis assigned the Claim a claim number: C-004-000247282.

39.     Between May 26 and the fall of 2021, Axis and First Look engaged in a

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

series of communications about who would defend the Claim, how to approach the Claim, and a strategy for attempting to resolve the Claim.

40.   Throughout these communications, Axis indicated its agreement with First Look that an early resolution strategy was a viable and reasonable approach to the Claim, and agreed that attempting an early mediation would be the best means to attempt to accomplish that goal.

41.   During this timeframe, First Look and Axis engaged in regular communications where Axis was apprised of the steps being taken to move the early resolution strategy forward, including the selection and scheduling of a mediator.

42.   On November 11, 2021, Axis belatedly issued a reservation of rights letter purporting to reserve its rights based on issues that could have been raised based on the text of the April 2, letter itself.

43.   At Axis' request, prior to the mediation between First Look and Claimant, First Look provided Axis with a tranche of documents detailing the Claim and the surrounding factual circumstances.  After receiving the documents, Axis waived the consent to settle provision of the Policy.

44.   At the November mediation between First Look and Claimant, the parties agreed to settle the Claim for a confidential sum and executed a settlement agreement on January 27, 2022.

45.   During the mediation, Axis and First Look were in constant contact. Axis requested updates and discussed settlement strategy with First Look.  Further, at times, First Look stalled the progress of the mediation for the specific purpose of giving Axis time to review and consider developments in the negotiations, and provide guidance and authorization to First Look on next steps.

46.   For example, Axis' claim handler told First Look it was "free to convey" a counteroffer of a specified amount—an action that is inconsistent with an intent not to provide coverage for the Claim.  This type of back and forth with Axis' claims handler occurred at least a half a dozen times.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

47.     Moreover, First Look sought and received authorization from Axis throughout the back-and-forth of the negotiations with Claimant, obtaining express authority and approval for the amount of each increased settlement offer extended to Claimant by First Look.

48.     After the settlement was consummated, First Look inquired repeatedly with Axis about its funding of the settlement, which Axis ignored for months after the settlement was reached.

49.     On February 11, 2022, and only after repeated follow up from First Look, Axis issued a formal denial letter wherein it took the belated and untimely position that it owed no coverage under the Policy because First Look did not provide timely notice of the Claim.  Axis based this wrongful position on the contention that since the April 2, 2021 letter referred to instances of gender discrimination dating back to 2016, the Axis policy for the 2016-2017 was the proper policy and, consequently, First Look should have provided notice during 2016-2017 policy period.

50.     In taking this position, Axis acknowledged that the Claim alleged covered Employment Practices Wrongful Acts but disputed the proper policy period. In doing so, Axis willfully ignored the Second Settlement between Claimant and First Look, which settled grievances and any related allegations spanning Claimant's relationship with First Look before that date.  Axis also ignored the new allegations of Wrongful Acts that were not the subject of any previous grievance.

51.     Axis' decision is particularly unreasonable and in bad faith given its course of conduct and handling of other claims with similar allegations.  On two prior occasions in 2021, Axis promptly indemnified First Look for settlements stemming from factually similar demands.  In communications between Axis and First Look, the parties discussed all three claims simultaneously and the same claims handler handled each claim.

52.     The only difference between those claims and this Claim is the quantum of damages.  In addition to the express coverage provided by the Policy, by promptly

covering the first two demands without question, Axis created a reasonable expectation of coverage for this Claim.  In reversing course and contravening First Look's reasonable expectations of coverage, Axis put its own interests ahead of those of its policyholder, First Look, in violation of California law.

53.     Claimant sought damages in connection with alleged conduct occurring after execution of the Subsequent Agreement and entered into the Second Settlement. The Claim does not relate to any of Claimant's previous contracts with First Look or any prior grievances because Claimant was made whole by the Original Settlement. Any claim made in relation to allegations of First Look's Wrongful Employment Acts under the Subsequent Agreement period is dissimilar and unrelated to the grievances that were the subject of the Original Settlement.  Thus, there was no basis for any claim to be made by Claimant relating to conduct predating the Subsequent Agreement and the Second Settlement, and First Look made no payment as part of the recent settlement for any pre-Subsequent Agreement conduct.  Axis knew this but chose to ignore the information and its impact to First Look's detriment.

54.     In spite of the myriad allegations of the covered post-Subsequent Agreement Wrongful Employment Acts, Axis self-servingly ignored these allegations. Axis chose to read the allegations of the April 2 demand narrowly and to ignore the chronology of events detailed above.  Axis refused to give equal weight to First Look's interest as it gave its own and ignored all reasonable bases for coverage.

55.     Further, and compounding its bad faith and misleading action towards First Look, Axis waited until after the parties signed the settlement agreement to raise its coverage defense of late notice and issue its denial.  Once it knew the cost associated with honoring its coverage obligations, Axis concocted its untimely denial and abandoned its policyholder, retreating behind its contrived denial.

## FIRST CAUSE OF ACTION

### (Breach of Contract Against Axis)

56.     First Look re-alleges and incorporates by reference paragraphs 1-50

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    above.

2        57.    Axis has a duty under the Policy, the law, and the parties' and insurance

3    industry custom and practice to indemnify First Look for the settlement of the Claim.

4        58.    Axis also had a duty under the Policy, the law, and insurance industry

5    custom and practice to promptly conduct a full and thorough investigation, including

6    investigation of all bases that might support First Look's claim for coverage.  Axis

7    also had a duty to give at least as much consideration to First Look's interest as Axis

8    gave to its own interests in assessing coverage for the Claim.

9        59.    Axis breached its duties under the Policy by, among other things:

10            a.    Failing to promptly conduct a full and thorough investigation of

11                the Claim and asserting grounds for denying coverage based on the

12                inadequate investigation;

13            b.    Failing to fully inquire into possible bases for coverage that might

14                support coverage for the Claim;

15            c.    Asserting grounds for denying coverage for the Claim that it knew

16                well in advance of its misleading actions suggesting it

17                acknowledged there was coverage for the Claim, and then denying

18                coverage based on facts it knew months before the settlement and

19                issuing its denial in an untimely manner;

20            d.    Denying coverage on grounds that were not supported by, and in

21                fact contrary to, the terms of the Policy, the law, insurance industry

22                custom and practice, and the facts;

23            e.    Taking a coverage position contrary to First Look's reasonable

24                expectation of coverage; and

25            f.    Giving greater consideration to its own interests than it gave to

26                First Look's interests.

27        60.    As a direct and proximate result of Axis' breach of contract, First Look

28    has sustained damages in an amount in excess of this Court's jurisdictional limit and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 13 –
COMPLAINT

1  to be determined at trial.

2  **SECOND CLAIM FOR RELIEF**

3  **(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing**

4  **against Axis)**

5  61.     First Look re-alleges and incorporates by reference paragraphs 1-55

6  above.

7  62.     Implied in the Policy was a covenant that Axis would act in good faith

8  and deal fairly with First Look, that Axis would do nothing to interfere with the rights

9  of First Look to receive benefits due under the Policy, and the Axis would give at least

10  the same level of consideration to First Look's interests as Axis gave to its own

11  interests.

12  63.     Axis also had a duty under the Policy, the law, and insurance industry

13  customs, practice, and standards to conduct a prompt and thorough investigation

14  including all of the bases that might have supported First Look's claim for coverage

15  before asserting coverage defenses of denying coverage.

16  64.     Instead of complying with these duties, Axis acted in bad faith, by among

17  other things,

18            a.     Failing to promptly conduct a full and thorough investigation of

19                   the Claim and asserting grounds for denying coverage based on an

20                   inadequate investigation;

21            b.     Failing to fully inquire into bases that might support coverage for

22                   the Claim;

23            c.     Wrongfully and unreasonably asserting grounds for denying

24                   coverage for the Claim that it knew well in advance of its

25                   misleading actions suggesting it acknowledged there was coverage

26                   for the claim, and then denying coverage based on facts it knew

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

months before the settlement and issuing its denial in an untimely

manner;

    d.    Unreasonably denying coverage based on grounds that Axis knew

were not support by, and in fact are contrary to, the terms of the

Policy, the law, insurance industry custom and practice, and the

facts;

    e.    Unreasonably taking a coverage position contrary to its

representations and contrary to First Look's reasonable

expectations of coverage;

    f.    Unreasonably failing and refusing to honor its promises and

representations in the Policy;

    g.    Giving greater consideration to its own interests than it gave to

First Look's interests; and

    h.    Acting as otherwise alleged.

65.    In breach of the implied covenant of good faith and fair dealing, Axis did the things and committed the acts alleged above for the purpose of consciously withholding from First Look the rights and benefits to which it is and was entitled under the Policy.

66.    Axis' acts are inconsistent with the reasonable expectations of First Look, are contrary to established insurance industry custom and practice, are contrary to legal requirements, are contrary to the express terms of the Policy, and constitute bad faith.

67.    As a direct and proximate result of Axis' acts, First Look has been damaged in an amount in excess of the Court's jurisdictional limits.  Also, pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), First Look is entitled to recover all attorneys' fees that it has reasonably incurred, and continues to incur, in its efforts to obtain the benefits due under the Policy that Axis has wrongfully withheld in bad faith.  First Look is also entitled to interest thereon at the maximum legal rate.

68.    Axis' conduct is despicable and has been done with a conscious disregard of First Look's rights, constituting oppression, fraud, and/or malice.  Axis has engaged in a series of acts designed to deny First Look the benefits due under the Policy.  Specifically, by acting as alleged above, in light of information, facts, and relevant law to the contrary, consciously disregarded First Look's rights and forced First Look to incur substantial financial losses, thereby inflicting substantial financial damage on First Look.  Axis ignored First Look's interests and concerns with the requisite intent to injure within the meaning of California Civil Code section 3294. Therefore, First Look is entitled to recover punitive damages from Axis in an amount sufficient to punish Axis, to make an example of Axis, and to deter similar conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, First Look prays for relief as follows:

### **ON THE FIRST CAUSE OF ACTION**

1.    For damages according to proof at the time of trial plus pre- and post-judgment interest.

### **ON THE SECOND CAUSE OF ACTION**

2.    For damages according to proof at the time of trial plus pre- and post-judgment interest;

3.    For reasonable attorneys' fees incurred in obtaining the benefits due under the Policy, pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), according to proof at the time of trial, plus interest; and

4.    For punitive damages in an amount to be determined at the time of trial;

### **ON ALL CAUSES OF ACTION**

5.    For costs of suit incurred herein; and

6.    For such other, further, and/or different relief as the Court may deem just and proper.

1   DATED:  August 22, 2022        REED SMITH LLP

2

3                                    By: _____
                                  Nicolas A. Pappas

4                                  John N. Ellison (*pro hac vice*
                                  forthcoming)

5                                  Attorneys for FIRST LOOK
                                  ENTERTAINMENT, INC. AND FIRST

6                                  LOOK INSTITUTE, Inc.

7

8

9

10                       **JURY TRIAL DEMAND**

11        Plaintiffs FIRST LOOK ENTERTAINMENT, INC. and FIRST LOOK

12   INSTITUTE, INC. hereby request a trial by jury in this action.

13

14

15   DATED:  August 22, 2022        REED SMITH LLP

16                                    By: _____

17                                    Nicolas A. Pappas
                                  John N. Ellison (*pro hac vice*

18                                  forthcoming)
                                  Attorneys for FIRST LOOK

19                                  ENTERTAINMENT, INC. AND FIRST
                                  LOOK INSTITUTE, Inc.

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware